UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 08-6114(DSD/AJB)

Janice L. Groteboer,

      Plaintiff,

v.                                                                     **ORDER**

Eyota Economic Development
Authority, doing business as
Arbor Gardens of Eyota and
Tealwood Management, LLC,

      Defendants.

> John C. Beatty, Esq. and Dunlap & Seeger, PA, 206 South Broadway Avenue, Suite 505, Rochester, MN 55904, counsel for plaintiff.
>
> Robyn K. Johnson, Esq., James L. Haigh, Esq. and Cousineau McGuire, 1550 Utica Avenue South, Suite 600, Minneapolis, MN 55416, counsel for defendants.

This matter is before the court upon the motion of defendants for summary judgment. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This housing dispute arises out of a lease agreement between plaintiff Janice L. Groteboer ("Groteboer") and defendant Eyota Economic Development Authority, d/b/a Arbor Gardens of Eyota ("Arbor Gardens"). Arbor Gardens is a senior housing facility that offers independent and assisted living and respite care. (Beatty

Aff. Ex. F at 24.)  Groteboer has multiple sclerosis and uses an electric wheelchair.  (Id. Exs. A at 10, D.)  She rented an apartment in the assisted living portion of Arbor Gardens from April 21, 2006, until August 31, 2007.

According to Arbor Gardens, Groteboer operated her electric wheelchair at excessively high speeds with inadequate control throughout her tenancy, damaging its property and endangering its residents and staff.  (Rademacher Aff. ¶ 7, Ex. E; Granger Aff. ¶¶ 4, 6; Austin Aff. ¶¶ 4-5.)  Shortly after Groteboer moved in, Arbor Gardens manager Donald Rademacher ("Rademacher") noticed damage to her apartment walls caused by her electric wheelchair, and asked her to pad the chair for protection.  (Rademacher Aff. ¶¶ 6, 21, Exs. B & E.)  In the summer of 2006, Rademacher spoke with Groteboer about similar damage to her front door, and again suggested that she pad the chair and slow down.  (Id. ¶ 6, Ex. B.)  Arbor Gardens claims that Groteboer's operation of her electric wheelchair made its elderly residents fear for their safety.  (See Johnson Aff. Exs. A at 5-6, B at 6-7, C at 5-7, D at 5-6, E at 4-6, F at 7, 10-11.)  Groteboer purportedly injured two people with her electric wheelchair: she drove over staff member Barbara Austin's ("Austin") foot and, on another occasion, ran into a dining room table, causing hot coffee to spill onto a resident.  (Austin Aff. ¶ 5; Rademacher Aff. ¶ 10.)

2

Arbor Gardens contends that Rademacher and his staff repeatedly asked Groteboer to slow down, pad her chair and stop damaging property and endangering other residents. For instance, at a February 2007 meeting with Groteboer and her social worker, Rademacher requested that Groteboer operate the chair more cautiously. (Rademacher Aff. ¶ 9; see Johnson Aff. Exs. G at 60-61, K-L.) In addition, after the coffee spill, Rademacher delivered a warning letter to Groteboer on May 10, 2007, and asked her not to use the chair in areas where other residents were present. (Rademacher Aff. ¶ 12, Ex. C.) Groteboer allegedly ignored the requests. (Id. ¶ 8; Granger Aff. ¶ 5; Austin Aff. ¶ 6.)

Groteboer denies that her operation of the electric wheelchair damaged property or harmed others. She admits, however, that she once ran her electric wheelchair over Austin's toe and that she caused a spill after her electric wheelchair caught and pulled a tablecloth off a dining room table. (Beatty Aff. Ex. KK at 7-8; Groteboer Aff. ¶ 8.) Groteboer maintains that prior to May 10, 2007, Arbor Gardens neither warned her about her use of the electric wheelchair nor asked her to alter her conduct. (Groteboer Aff. ¶ 11.) She also denies receiving Rademacher's warning letter, but admits that he verbally warned her. (Id. ¶¶ 11-12; Beatty Aff. Ex. A at 62-63.)

After May 10, 2007, Arbor Gardens alleges that Groteboer continued to operate her electric wheelchair in an unsafe manner. (Rademacher Aff. ¶ 12.) On May 14, 2007, Rademacher delivered a termination of lease and services agreement letter to Groteboer that stated:

> We have been working with you regularly over the past several months to find a way for you to operate your electric scooter safely, in a manner that does not pose a threat to the safety of others and that does not cause unacceptable wear and tear on your apartment and common areas in the Arbor Gardens Senior Community.
>
> Notwithstanding our efforts to work with you on safety protocols, you recently caused an accident that could have resulted in the injury of another tenant with your electric scooter. Over the past weekend, you also repeatedly failed to comply with the safe operating agreement we made with you late last week, which was designed to permit you to continue to use of [sic] your electric scooter, yet also to avoid another incident which endangers other people. The Arbor Gardens Community has a large number of frail tenants who are unable to move out of the way to protect themselves from harm when approached by a person or a motorized device not properly controlled.
>
> Therefore, Arbor Gardens Senior Community is terminating your Lease and Services Agreement effective June 30, 2007.

(Id. ¶ 13, Ex. D.) After receiving this letter, Groteboer allegedly met with Rademacher and her social worker on June 4, 2007, to discuss possible accommodations. (Beatty Aff. Exs. GG at 22-23, HH.) At the meeting, Groteboer offered to pay for any

4

property damage, but Arbor Gardens declined the offer. (Id. Exs. GG at 25-26, HH.)

Thereafter, on June 7, 2007, JaPaul Harris ("Harris"), Groteboer's former counsel, sent a letter to Barbara Blumer ("Blumer"), counsel for Arbor Gardens, requesting that "all tenancy termination proceedings cease" and that Groteboer "be permitted to propose a plan as an accommodation of her disability." (Blumer Aff. ¶ 3, Ex. A.) Specifically, Harris stated that:

> Ms. Groteboer has agreed to have her power chair outfitted with padding. She will also use her motorized power chair in her unit and outside. She will also use the motorized power chair in speed 1 or 2 while going to the laundry room door, her designated spot in the dining room, down the hallway and down the elevator to get to the dining room or outside, and to the public restrooms. She will make a conscious effort to call for assistance or utilize the assistance of family or friends when leaving her apartment. She will not use her motorized power chair when within the dining room, laundry room or kitchen area.

(Id. Ex. A at 2.) Blumer responded on June 12, 2007, noting that Arbor Gardens was willing to work with Groteboer to "develop a detailed plan for her mobility within Arbor Gardens." (Id. ¶ 4, Ex. B at 1.) Blumer also noted that Arbor Gardens would seek a condition allowing it to terminate Groteboer's tenancy if she failed to comply with the mobility plan. (Id. ¶ 4, Ex. B at 2.) On June 19, 2007, Harris sent a proposed agreement to Blumer, including the same conditions outlined in his June 7 letter and the termination provision requested by Arbor Gardens. (Id. ¶ 5, Ex.

C.) Blumer responded with a revised proposed agreement on June 21, 2007, suggesting that Groteboer use a manual wheelchair in all hallways and common areas inside Arbor Gardens. (Id. Ex. D at ¶ 2(c).) Blumer further proposed that Arbor Gardens provide Groteboer five escorts per day and that:

> Groteboer will not use her power chair for any reason or purpose at Arbor Gardens, except as follows:
> 1. In Groteboer's unit;
> 2. In exceptional cases only as outlined [here], in hallways and common areas, and at all times with an escort and at speed 1 or 2....
> 3. [On] sidewalks and parking lots at Arbor Gardens, so long as Groteboer has been escorted from her unit to the outside door... .

(Id. Ex. D at ¶¶ 2(e)(1)-(3), 2(g).) Harris responded on July 2, 2007, proposing that Groteboer be allowed to use her electric wheelchair in Arbor Garden's hallways and common areas at any time, so long as she was accompanied by an escort, and that Arbor Gardens provide her seven escorts per day. (Id. ¶ 7, Ex. E ¶¶ 2(e)(2), 2(g).) Blumer accepted this proposal and stated that Arbor Gardens would provide Groteboer ten one-way escorts each day. (Id. ¶ 8, Ex. F ¶¶ 2(e)(2), 2(g).) After counsel reached the agreement, however, Groteboer refused to sign it. (Id. ¶ 9; Beatty Aff. Ex. A at 115-16; Groteboer Aff. ¶ 17; Rademacher Aff. ¶ 16.) Groteboer alleges that Arbor Gardens imposed the escort condition despite her refusal to abide by it. (See Beatty Aff. Ex. DD.)

On July 18, 2007, Groteboer told Arbor Gardens that she planned to move to a different facility on August 31, 2007.

(Rademacher Aff. ¶ 18; Blumer Aff. ¶ 11.) Thereafter, Blumer and Harris negotiated a mutual termination agreement. The agreement noted that the lease termination was mutual and voluntary, and provided that Groteboer would drive her electric wheelchair slowly and be accompanied by an escort during busy periods, such as meal and snack times, throughout the remainder of her tenancy. (Rademacher Aff. ¶ 19; Blumer Aff. ¶ 12, Ex. G ¶¶ 1-2, 5.) Groteboer did not sign the mutual termination agreement, and Arbor Gardens alleges that she continued to operate her electric wheelchair dangerously and without escorts until August 31, 2007. (Rademacher Aff. ¶¶ 19-20; Blumer Aff. ¶ 14.)

On November 21, 2008, Groteboer filed a complaint against Arbor Gardens and the company that manages its operations, Tealwood Management, LLC (collectively, "Defendants"), alleging violations of the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601-3619. The court now considers Defendants' March 10, 2010, motion for summary judgment.

**DISCUSSION**

**I.  Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

7

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of her claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. The FHAA**

The FHAA prohibits discrimination in housing on the basis of race, color, religion, sex, handicap, familial status or national origin.[1] See 42 U.S.C. § 3604. Pursuant to the FHAA, Groteboer asserts disparate treatment, reasonable accommodation and hostile

---

[1] It is undisputed that Groteboer is a handicapped person for purposes of the FHAA. See 42 U.S.C. § 3602(h) (defining handicap).

environment claims against Defendants.  The court considers each claim in turn.

   **A.   Disparate Treatment**

   Groteboer first asserts a disparate treatment claim pursuant to § 3604(f) of the FHAA.  Section 3604(f) makes it unlawful to discriminate in the rental of a dwelling, or in the terms, conditions or privileges of the rental, or to "otherwise make unavailable" a dwelling to a renter because of the renter's handicap.  Id. §§ 3604(f)(1)(A), (2)(A).  Groteboer alleges that Defendants unlawfully made housing unavailable to her by terminating her tenancy on May 14, 2007, and discriminated against her in the terms and conditions of her rental by denying her the use of her electric wheelchair in the common areas of Arbor Gardens and forcing her to use escorts.

   Where no direct evidence of discrimination exists, as here, the court applies the burden-shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to disability-based claims for disparate treatment.  See <u>Peebles v. Potter</u>, 354 F.3d 761, 766 (8th Cir. 2004); <u>Dev. Servs. of Neb. v. City of Lincoln</u>, 504 F. Supp. 2d 726, 737 (D. Neb. 2007).  Under this framework, Groteboer must make a prima facie showing of discrimination by a preponderance of the evidence.  See <u>McLain v. Andersen Corp.</u>, 567 F.3d 956, 967 (8th Cir. 2009) (setting forth burden-shifting analysis for disability discrimination claim).  To establish a prima facie case under

9

§ 3604(f), Groteboer must show that she was denied housing or not offered the same terms, conditions or privileges of rental under circumstances that give rise to a reasonable inference of unlawful discrimination. See Hodges v. Cottage Hill Apartments, No. 05-5060, 2007 WL 120586, at *7 (W.D. Mo. Jan. 11, 2007). If Groteboer sets forth a prima facie case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for their actions. See McLain, 567 F.3d at 967. The burden then shifts back to Groteboer to demonstrate that Defendants' justification is pretextual. Id.

The court first determines that Groteboer cannot establish a prima facie case that Defendants violated the FHAA by denying her housing. The undisputed evidence before the court indicates that Defendants never terminated Groteboer's tenancy. Rather, after May 14, 2007, Defendants engaged in extensive negotiations with Groteboer's counsel in an attempt to accommodate her tenancy at Arbor Gardens. Groteboer lived at Arbor Gardens until August 31, 2007, when she voluntarily moved to another facility. In light of these facts, Groteboer cannot show that Defendants denied or otherwise made housing unavailable to her.

The court next considers Groteboer's claim that Defendants discriminated against her based on the terms and conditions of her rental. Groteboer first argues that Defendants unlawfully conditioned her rental at Arbor Gardens on the nonuse of her

10

electric wheelchair in common areas. This argument fails, however, because Groteboer presents no evidence that Defendants imposed such a condition. Rather, the evidence indicates that Arbor Gardens agreed to allow Groteboer to use her electric wheelchair in common areas at any time, so long as she operated the chair slowly and with an escort. (Blumer Aff. ¶ 8, Ex. F at ¶ 2(e).) Therefore, Groteboer cannot show that Defendants denied her the use of her electric wheelchair in common areas.

Groteboer next argues that Arbor Gardens unlawfully imposed the condition of mandatory escorts. The court first notes that a factual dispute exists as to whether Arbor Gardens actually imposed this condition. While Groteboer submits evidence that escorts were used from July 11 to 18, 2007, other evidence indicates that she operated her electric wheelchair without escorts. (See Beatty Aff. Exs. CC & DD (noting escorted and unescorted trips); Rademacher Aff. ¶ 20 (noting lack of escort use).) Assuming that Groteboer can establish a prima facie case of disparate treatment based on the escort condition, however, summary judgment is still warranted because Defendants offer a legitimate, nondiscriminatory reason for their actions. According to Defendants, the escort condition was necessary to prevent property damage and maintain the safety of residents and staff. Groteboer offers no evidence that Defendants' justification is pretext for unlawful discrimination. Accordingly,

the court grants Defendants' motion for summary judgment on Groteboer's disparate treatment claim.

## B. Reasonable Accommodation

Groteboer next asserts that Defendants discriminated against her by refusing to grant her requests for a reasonable accommodation. "The FHAA requires accommodation of a handicap if it is reasonable and necessary to afford a handicapped person the equal opportunity to use and enjoy a dwelling." Essling's Homes Plus, Inc. v. City of St. Paul, 356 F. Supp. 2d 971, 979 (D. Minn. 2004) (citing 42 U.S.C. § 3604(f)(3)(B)). "An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it." Dev. Servs. of Neb. v. City of Lincoln, 504 F. Supp. 2d 714, 723 (D. Neb. 2007) (citation and internal quotation marks omitted). An accommodation is necessary if it will "affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." Id.

The court applies a modified burden-shifting analysis to reasonable accommodation claims. Peebles, 354 F.3d at 766 (citation omitted); Essling's Homes Plus, 356 F. Supp. 2d at 979. To prevail on her claim, Groteboer must first show that the requested accommodation was "reasonable on its face." Peebles, 354 F.3d at 768 (citation and internal quotation marks omitted).

Defendants must then "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." Id.

Groteboer argues that she made numerous reasonable accommodation requests between May 14 and July 18, 2007, but Defendants refused to grant them. According to Groteboer, she proposed to pay for any property damage, pad her electric wheelchair, limit her speed, use assistance when available, and allow Arbor Gardens to terminate her tenancy if she breached these conditions. She also requested that Arbor Gardens provide her seven escorts per day. Even if the court assumes that these proposals constitute reasonable accommodation requests, Groteboer's claim fails because she cannot prove that Defendants denied her requests. Rather, the evidence indicates that Defendants accepted Groteboer's requests after engaging in good faith negotiations with her counsel. The final agreement included accommodations such as the padding of Groteboer's chair, her operation of the chair at a reduced speed, termination of her tenancy if she did not comply, and the use of ten one-way escorts per day. (Blumer Aff. ¶ 8, Ex. F.) Groteboer, not Defendants, refused to accept the agreement. Groteboer presents no evidence suggesting that the agreement negotiated by her counsel was unreasonable. In light of these circumstances, Groteboer cannot establish that Defendants refused her requested accommodations, and summary judgment is warranted.

**C.   Hostile Environment**

Lastly, Groteboer alleges that Defendants' termination of her tenancy, denial of her requested accommodations and imposition of mandatory escorts created a hostile environment in violation of § 3617 of the FHAA.  Section 3617 makes it unlawful to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of" her right to fair housing.  42 U.S.C. § 3617.  To establish a hostile-environment claim, Groteboer must show severe and pervasive harassment.  See Neudecker v. Boisclair Corp., 351 F.3d 361, 364-65 (8th Cir. 2003).  Groteboer cannot make such a showing.  As previously noted, the evidence before the court indicates that Defendants neither terminated Groteboer's tenancy nor denied her accommodation requests.  Furthermore, no evidence indicates that Defendants engaged in harassment that was sufficiently severe and pervasive to create a hostile housing environment.  Therefore, summary judgment is also warranted on this claim.

## CONCLUSION

Accordingly, based on the above **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [Doc. No. 25] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   July 14, 2010

                                                s/David S. Doty  
                                                David S. Doty, Judge  
                                                United States District Court